IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**NNJ DEVELOPMENT, LLC, d/b/a**
**MENNO BRAND PRODUCTS,**

    Plaintiff/ Counter-Defendant

v.                                       Civ. No. 08-535 MV/RLP

**DUTY FREE WORLD, INC.,**

    Defendant/ Counter-Claimant.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTIONS TO COMPEL ANSWERS TO INTERROGATORIES
## AND RESPONSES TO REQUESTS FOR PRODUCTION

This matter comes before the court on the Motions of Plaintiff/Counter-Defendant, NNJ Development, LLC, d/b/a Menno Brand Products ("NNJ") to compel Defendant/Counter-Claimant, Duty Free World, Inc., ("DFW") to Answer Interrogatories and Respond to Requests for Production. [Docket Nos. 61 & 63]. The Motions are GRANTED in part and DENIED in part.

    I.    Background

NNJ makes jewelry that it sells to duty free vendors, who then list the jewelry in in-flight catalogues. DFW is one such vendor. One of the issues in the instant suit involves determination of what set of documents governs the contractual relationship, if any, that existed between the parties with respect to jewelry that was manufactured by NNJ and delivered to DFW.

DFW originally ordered the jewelry from a Belgium company, Menno Design NV in December 2007. DFW had done business with Menno Design NV for approximately four years prior to December 2007. DFW contends that three documents executed in

December 2007 between it and Menno Design NV (letter agreement, buy back agreement, purchase order) govern the contractual relationship between it and NNJ. NNJ admits that it "stands in the shoes" of Menno Design NV, but denies that these are the operative documents.  NNJ contends that a subsequent purchase order and invoice executed in February 2008 govern the contractual relationship between it and DFW. The parties also dispute whether DFW returned, or attempted to return, the jewelry at issue.  Additional issues include whether other theories of recovery are applicable (e.g., duty of good faith and fair dealing, unjust enrichment, quantum meruit and open account), defenses/affirmative defenses (e.g., fraud, economic duress and unfair practices), and damages.

NNJ served Interrogatories and Requests for Production on DFW.  DFW asserted numerous objections to the discovery requests, many of which were resolved by the parties without court intervention.  This Memorandum Opinion and Order will address only those matters which are still in dispute.

In a nutshell, DFW contends that discovery in the case is limited to the Menno-DFW-NNJ transaction at issue.  It resists all discovery directed more broadly to its prior contractual relations with Menno Design NV or other jewelry manufacturers.  NNJ contends that the history of DFW's business relationships with Menno Design NV and other jewelry manufacturers is relevant to issues such as course of dealing.

II.   Legal Standard

Fed.R.Civ.P. 26(b) provides

(1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition,

>and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)( c).

Id.

"[D]iscovery procedures in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information." Klesch & Co. Ltd. v. Liberty Media Corp., 217 F.R.D. 517, 523 (D.Colo.2003) (emphasis added). See also Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 619 (D.Colo.2007). "Limitations on the discovery process necessarily conflict with the 'the fundamental principle that 'the public . . . has a right to every man's evidence.' " Simpson v. University of Colorado, 220 F.R.D. 354, 356 (D.Colo.2004) (quoting Trammel v. United States, 445 U.S. 40, 50 (1980)).

Fed. R. Civ. P. 37(a)(5)(B) permits the court to enter a protective order pursuant to Fed.R.Civ.P. 26( c) if a motion to compel is denied.  Fed.R.Civ.P. 26( c) states, " . . . [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . " The Supreme Court has noted that a state rule patterned after Rule 26( c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36(1984); see also Centurion Indus., Inc. v. Warren Steurer & Assoc., 665 F.2d 323, 326 (10th Cir.1981)(trade secrets). The court may, among other actions, forbid certain disclosure or discovery, specify terms for the disclosure or discovery, forbid inquiry into certain

3

matters, or limit the scope of disclosure or discovery to discrete matters. Fed.R.Civ.P. 26(c)(1).

"[D]iscoverable information may include 'other incidents of the same type or involving the same product' or 'information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses.' " Klesch & Co. Ltd., 217 F.R.D. at 524 (addressing motion to compel production of documents responsive to a subpoena). When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. Id. (citations omitted).

III.    Analysis

A. Interrogatories

**Interrogatory No. 2** asks for details of every legal proceeding, lawsuit or administrative proceeding in which DFW has been involved, either as a party, witness or expert.  There is no date or subject matter limitation included in the interrogatory.

DFW objects stating that its litigation history in all of its commercial ventures for its entire history is not relevant and the interrogatory is overly broad, burdensome and submitted for the purpose of harassment.

DFW has offered nothing more than boilerplate objections in response to Interrogatory No. 2. Cf. McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d

1482, 1485 (5th Cir.1990) (the party resisting discovery "must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive") quoting Josephs v. Harris Corp., 677 F.2d 985, 991-92 (3rd Cir.1982); Grider v. Keystone Health Plan Central, Inc., 2007 WL 2874423, *4-5 (E.D.Pa.2007) (held that defendants had violated Fed.R.Civ.P. 26(g) and 37 by interposing general boilerplate objections to discovery requests). Generalized objections that a discovery request is vague, overly broad or unduly burdensome are not acceptable and should be overruled. American Rock Salt Co., LLC v. Norfolk Southern Corp., 228 F.R.D. 426, 432 (W.D.N.Y.2004). Cf. Athridge v. Aetna Casualty and Surety Co., 184 F.R.D. 181, 190-91 (D.D.C.1998) (holding that general boilerplate objections are ineffective).

To the extent Interrogatory could be read to include clearly irrelevant types of litigation (e.g., worker's compensation, ERISA) it is overly broad.

**IT IS THEREFORE ORDERED** that DFW shall answer Interrogatory No. 2, limited, however, to legal proceedings, law suits or administrative proceedings involving disputes with suppliers of items listed in its in-flight catalogues, or disputes with individuals or entities to whom its in-flight catalogues are distributed, and further limited in time to any such legal proceedings, law suits or administrative proceedings that DFW has been involved in since January 1, 2003.

**Interrogatory No. 3** asks DFW to describe all business activity that creates any revenue for it.

DFW states that it has supplied the information requested. NNJ has not challenged the response it has received, but requests that the court overrule DFW's

original objection.  The court finds that the dispute is moot.

**IT IS THEREFORE ORDERED** that no further answer to Interrogatory No. 3 is required.

**Interrogatory No. 4** asks DFW to describe in detail its business relationship with Menno Design NV[1].

**Interrogatory No. 5** seeks information for every order DFW ever placed with Menno Design NV.[2]

DFW addressed Interrogatories 4 and 5 together.  It contends that the volume of transactions between it and Menno Design NV, 60 transactions over a 4-year period, demonstrate that the interrogatory is overly broad, burdensome and submitted for the purpose of harassment, and that inquiry into any of its prior dealings with Menno Design NV is irrelevant and not calculated to lead to the discovery of admissible evidence.

I find that the Interrogatories 4 and 5 are not overly broad, burdensome or submitted for the purpose of harassment.  The period at issue, four years, is relatively brief.  The number of transactions is not overwhelming.  The information sought may lead to the discovery of admissible evidence.

---

[1] When DFW first became aware of Menno Design NV; Who from DFW first contacted Menno, and whom they contacted; The identify of all individuals from DFW involved in the decision to purchase jewelry from Menno NV; The identify of all individuals involved in any negotiations for the purchase of goods by DFW from Menno Design NV; the identity and location of all documents associated with DFW's business relationship with Menno Design NV.

[2] Date; items ordered; purpose for ordering items; date delivery was expected by DFW; date delivery was completed; amount paid; date of payment; any items returned from the order; amount of credit issued by Menno Design NV for the returned items; the identity and location of all documents associated with each order.

**IT IS THEREFORE ORDERED** that DFW's objections to Interrogatories No. 4 and 5 are overruled, and that NNJ's Motion to Compel an Answer to Interrogatories No. 4 and 5 is Granted.

**Interrogatory No. 9** asks for the identity and contact information for each entity to whom DFW distributes jewelry.

**Interrogatory No. 10** asks for information related to any entity to which DFW has ever distributed Menno branded products.[3]

DFW addressed Interrogatories 9 and 10 together. It states that the interrogatories are not calculated to lead to the discovery of admissible evidence, are overly broad, burdensome, or are submitted for the purpose of harassment. It elaborates on these objections by stating that it is unequivocally established that it acquired the jewelry at issue solely for Iberia Airlines, and that inquiry as to other entities with which it distributes jewelry is irrelevant.

NNJ contends these interrogatories may lead to the discovery of admissible evidence with regard to the (1) whether the jewelry DFW claims to have returned to it was indeed the jewelry NNJ supplied and (2) whether DFW was damaged by any alleged delay by NNJ in delivering the jewelry to DFW. NNJ further states that it has properly limited this interrogatory, by seeking information only as to "jewelry items the same, or similar to, the jewelry that forms the basis of this suit."

---

[3]Date of first distribution to that entity; each distribution of products the same or similar to the products in this case; the source of those products; all return information for past three years; disposition of each return items from date it was received by DFW until the present or until no longer in DFW's possession; the identity and location of all documents associated with the distribution and/or return of these items.

I find that Interrogatories 9 and 10 may lead to the discovery of admissible evidence. I also find that as written, the Interrogatories are overbroad, and should be limited to jewelry that is the same or similar to that at issue on this suit. I note that the purchase order upon which DFW relies describes two types of jewelry items: "Gold Plated Necklace Togg" and "Sweet Water Pearl Necklac." (Docket No. 6 Ex. 3). The invoice upon which NNJ relies describes two types of jewelry items: "20 Strand 18" LGP NK (Menno Silk Gold Toggle)" and "10 St. Pearl NK Silver (Menno Sweetwater Pearl NK)." (Docket No. 19, Ex. 1). The court assumes that there is no dispute over what jewelry is at issue, and what would constitute "similar" jewelry.

**IT IS HEREBY ORDERED** that NNJ's Motion to Compel Answers to Interrogatories No. 9 and 10 is Granted in Part and Denied in Part:

In answer to Interrogatory No. 9, DFW shall identify each entity to which it has distributed jewelry that is the same or similar to that at issue in this suit, including for each the name, address and specific contact information for the entity, and further limited to any such distribution on or after January 1, 2003.

In answer to Interrogatory No. 10, DFW shall provide the information requested, limited to its distribution of Menno branded jewelry that is the same or similar to that at issue on this law suit.

B.   Requests for Production

The only Request that remains at issue is Request No. 3, which seeks all documents that relate in any way to business between DFW and Menno Design NV.[4] DFW states that it has produced all documents related to this particular transaction, a total

---

[4] See Docket No. 64, Ex. D.

of 55 pages, that discovery of documents related to any other transaction between Menno Design NV and DFW is not calculated to lead to the discovery of relevant evidence, is overly broad and is harassing.  DFW states, without supporting affidavit, that it took 30 man-hours to locate the 55 pages of documents it has produced, and estimates that to respond to this Request would entail thousands of employee hours.

I have determined that prior business dealings between Menno Design NV and DFW may lead to the discovery of admissible evidence.  Despite DFW's unsupported protests to the contrary, the period of time (2003-2007) and of transactions (60) involved do not make the Request overly broad or harassing.

**IT IS THEREFORE ORDERED** that DFW's objections to Request for Production No. 3 are overruled, and that NNJ's Motion to Compel Request to Request for Production No. 3 is Granted.

**IT IS FURTHER ORDERED** that DFW shall serve its Answers to Interrogatories Nos. 2, 4, 5, 9 and 10 and Response to Request for Production No. 3 by August 21, 2009.

**IT IS SO ORDERED.**

Richard L. Puglisi
United States Magistrate Judge